[Civ. No. 551. Third Appellate District.—May 7, 1909.]

FRANK V. SILVA, Respondent, v. C. H. HAWN, Appellant.

EASEMENT—RIGHT OF WAY FOR IRRIGATING DITCH—PRESCRIPTION—IN-JUNCTION.—Where a right of way for an irrigating ditch over the land of the defendant has been acquired by the plaintiff, by prescription, the plaintiff may enjoin any interference therewith by the defendant.

ID.—CONFLICTING EVIDENCE—SUPPORT OF FINDINGS—ADVERSE USER.—When there is a substantial conflict in material portions of the testimony, but there is sufficient evidence tending to support the plaintiff's prescriptive right, and to show that his use of the ditch over defendant's land for irrigation of plaintiff's land was open and

notorious under claim of right with the knowledge of the defendant for more than the requisite period, the findings for plaintiff are sufficiently supported.

ID.—TENTATIVE PROPOSITION TO BUY PEACE—REJECTION OF PRICE ASKED BY DEFENDANT—CONTINUOUS ADVERSE USER NOT INTER- RUPTED.—A tentative proposition by the plaintiff to a son in law of defendant to buy his peace, which came to naught, defendant having asked a price which plaintiff repudiated, stating that he would pay nothing and proceeded with the adverse claim, does not show such a recognition of defendant's right as would interrupt plaintiff's adverse user.

ID.—OPENNESS OF ADVERSE USER—NOTICE TO DEFENDANT—FACTS PUT- TING UPON INQUIRY.—When the adverse user of the ditch extending across defendant's land for the irrigation of plaintiff's land was so open and notorious that the defendant and his agent could not have failed to note the same, or to be put on inquiry as to plaintiff's ad- verse user of the easement or right of way for the ditch, they are chargeable with notice thereof.

ID.—EXCLUSIVENESS OF PLAINTIFF'S CLAIM—MEANING OF REQUIREMENT. When plaintiff's claim of title was as his own and exclusive of any other right, so far as he was concerned, it is sufficiently exclusive; but this requirement does not mean that all other persons were ex- cluded from the use of the ditch so long as plaintiff's right to ir- rigate his land when required was not taken from him.

ID.—ADVERSE USER DURING CROPPING SEASON SUFFICIENT.—It is not requisite that the user of the ditch should be continuous and unin- terrupted throughout the whole of every year; but the adverse user of an irrigation ditch across the lands of another, only during the cropping season, the ditch not being needed at other times, does not break the continuity of the user.

ID.—DITCH NOT ASSESSED FOR TAXATION—BURDEN OF PROOF.—When there is nothing to show that the ditch was separately assessed for taxation, or was assessed at all, it was not necessary for plaintiff to show payment of taxes thereon. The law does not require an easement to be assessed; and the burden was on the defendant to show that it had been assessed.

ID.—KNOWLEDGE BY OWNER—ACQUIESCENCE IN EASEMENT PRESUMED.— While the right to the easement depends on the knowledge and acquiescence of the owner of the land upon which it is claimed, both may be inferred from the facts, and their existence is matter for the court to determine as a fact in the light of the relations be- tween the parties and the surrounding circumstances. But if knowl- edge by the owner of the land of the adverse user of the easement is shown, the acquiescence of the owner will be presumed therefrom, if the owner does not prove to the contrary.

APPEAL from a judgment of the Superior Court of Fresno County.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

E. D. Edwards, and M. K. Harris, for Appellant.

Sutherland & Barbour, for Respondent.

CHIPMAN, P. J.—This is an action to restrain defendant from obstructing the flow of water in an irrigating ditch and plaintiff's use thereof and to have the court decree that the said ditch is appurtenant to plaintiff's land.   Plaintiff had judgment, from which defendant appeals on bill of exceptions.

Plaintiff is the owner of sections 17 and 20 in township 13 south, range 19 east, in Fresno county, and defendant is the owner of the north half of the northeast quarter of section 16 in said township.   It will thus be seen that defendant's land lies northeast from plaintiff's land and one-half mile from the east line of section 17.   Adjoining section 16 on the north is section 9.   Plaintiff claims an easement by prescriptive right over defendant's land, as appurtenant to plaintiff's land, for an irrigating ditch which receives its water from the Fresno Canal and Irrigation Company's Canal at a point in section 9, thence crossing defendant's land and the intermediate land in section 16, running in a southwesterly direction to sections 17 and 20.

The court made the following findings: (1) That plaintiff has been the owner of sections 17 and 20 above described for more than five years last past; (2) that said land is irrigated from the canal of the Fresno Canal and Irrigation Company on the southeast quarter of section 9 (above mentioned) through and over the north half of the northeast quarter of section 16 (above mentioned); (3) that said ditch was constructed more than ten years prior to the commencement of this action by a predecessor in title of plaintiff, for the purpose of irrigating the land now owned by plaintiff and ever since its construction said ditch has been used by the plaintiff and his predecessor in title for the purpose of irrigating alfalfa, trees and vines and other growth

upon the said land; (4) "That such user of said ditch by plaintiff was open, notorious, was hostile to the title of the defendant and the predecessor in title of defendant, was under claim of right by the plaintiff as an appurtenance to the said sections 17 and 20, and was continuous and uninterrupted for a period of more than five years prior to the commencement of this action and immediately prior to the month of August, 1907"; (5) that during the month of August, 1907, defendant was owner and in possession of said north half of the northeast quarter of said section 16, "and that while so the owner and in possession and during said month of August, the defendant erected an obstruction in said ditch by reason of which obstruction water was prevented, for a period of one week, from passing through said ditch to the said sections 17 and 20," by reason whereof plaintiff "was deprived of all water necessary to irrigate certain alfalfa, trees, and vines then growing on said sections 17 and 20 and that the defendant (plaintiff?) was damaged thereby in the sum of one dollar."

The court by its decree adjudged that said ditch is an appurtenance to said sections 17 and 20 and that plaintiff has the right to the uninterrupted flow of water, from the said main canal of the Fresno Canal and Irrigation Company, through the same and that defendant be forever enjoined from interfering therewith.

Defendant challenges the sufficiency of the evidence to support findings 2, 3, 4 and 5, above stated. No question arises as to plaintiff's right to water; defendant objects to his use of the ditch to get it.

This case presents the not unfamiliar and sometimes perplexing difficulty of determining whether there is a substantial conflict in material portions of the testimony. We have examined the record with sufficient care to convince us that such conflict exists here. We are also satisfied that the findings have support in the evidence.

There was evidence tending to show that plaintiff went into possession as tenant of sections 17 and 20 in November, 1900, and continued to occupy the land as such tenant until October, 1902, when he became the purchaser of the land and was at the commencement of the action its owner; that when he took possession the ditch in question was constructed and was in use to bring water to the land for irrigation purposes

thereon and that he continued to so use it from year to year
without obstruction until August, 1907, when defendant
placed a dam in said ditch on his land in section 16, where-
upon plaintiff brought this action. There is evidence that
the ditch was originally constructed by the superintendent of
the Fresno Canal and Irrigation Company, and he so testi-
fied, from the main canal over the land now owned by de-
fendant (the ownership then not appearing) and to the east
line of sections 17 and 20, and that it was for the purpose of
supplying water to those sections for irrigation; this was
about the year 1893. This witness also testified that the
ditch was used to carry water to these sections and was so
used continuously while he remained with the company, which
was up to the year 1902. He testified: "I never followed the
ditch through since it was built. Up to five years ago (the
trial was in December, 1907), the flow of the water ditch was
continuous so far as I know. I passed there every few days.
That ditch always had its share. It has always demanded
water." Witness Emery testified that he was ditch tender
for the Fresno Canal and Irrigation Company. He testified:
"I am acquainted with this ditch. It was there before I
went there eight years ago. I go over it one or two times a
week at the head. It has been running water for eight years
that I know of, off and on. Sometimes they would turn it
off, for there ain't much irrigated in that ditch, and when
they wanted it they would go and get the water. Previous
to the 9th of last August (he was testifying in December)
there was no obstruction in that ditch while I was on the
ditch. That ditch irrigates part of section 16. There is a
water right on that, and about all of 17 and 20 and then
some south of there. The ditch must be close on to four
miles. It forks in the center of 17, one running straight
southwest, and the other turning the other way. I went there
in 1904, I believe it was, and cleaned the ditch from one end
to the other. I did this work for the Fresno Canal and Ir-
rigation Company." He testified on cross-examination that
he was on defendant's land in section 16 in 1899 or 1900 and
Clark, defendant's son in law, was there. He told witness
"he would not allow any water turned on. He didn't say
who he was there for. He said nobody should turn water
through there." He was asked how this conversation came
about and answered: "Mr. Silva asked me for water and I am

supposed to turn the water on. Generally I turned the water out and let it go. He told me this and the water was still going along through just the same. I don't ask a man whether I can turn water through the ditch or not. I turn the water on at the head and let it go itself. Clark turned it off; I turned it on again several times. That was 1899 or 1900. He said he didn't want any water to run through to Mr. Silva. I represented the water company.''

Witness Murray testified that since December, 1903, he has been in possession of land in section 30, a mile south of plaintiff's land, and that water was then running in this ditch to plaintiff's land and that witness built a ditch to his land connecting with the ditch in question in 1904 and has used this ditch continuously ever since to irrigate his land and never had any difficulty in getting water from the ditch. He testified that in 1904 he was at the headgate several times and no one was using the ditch above Silva's land; that he was on Silva's place in 1902, in July, and that ''there was water on Silva's place at the time coming through the ditch but didn't know whether it was being used for irrigation or not.'' Plaintiff testified that he irrigated alfalfa and grain and every year after he took possession of the land and in later years some trees and vines and grain. That his use of the ditch was open, notorious, under claim of right and with the knowledge of defendant and adversely to him we think may be inferred from the circumstances and facts appearing in the case.

It appeared that defendant was, some years before plaintiff took possession of sections 17 and 20, himself a tenant of this land under its then owner; his testimony was that he built the ditch throughout its entire length to this land for irrigating purposes and so used it during his tenancy. That he did build that part running over sections 17 and 20 is not contradicted, but his testimony that he built from the main canal to this land was in conflict with Church's testimony and the court accepted that of the latter witness. However, defendant afterward, about the year 1899, took possession of the land in section 16 under lease and by himself or by his son in law, Clark, remained in control up to 1904 or 1905, when Clark left the place and defendant purchased the land in June, 1907. Defendant was absent from the county after 1900, but Clark had control of the land in section 16 and was

defendant's agent. The ditch as first constructed by Church, and extended over sections 17 and 20 by defendant, was never abandoned and was in use by a tenant who succeeded defendant and also when plaintiff took possession, and was by him thenceforward used for irrigating purposes. This fact is also much contested, on which, as elsewhere, the evidence is in conflict. Bearing upon this point defendant introduced witnesses to show that Clark, representing him, placed a dam in the ditch, on section 16, in the year 1902 or 1903, which completely obstructed the flow of water, and that if plaintiff got any water after that it was only seepage water. But here again the evidence was in conflict both as to there being a dam sufficient to materially interrupt the flow of water and as to the quantity of water. It was not shown that seepage in the alleged dam would at all account for the water flowing through to plaintiff's land, and further, south to other land; and plaintiff testified that there was no obstruction in the ditch such as claimed until in 1907 which gave rise to this suit.

There was evidence that plaintiff spoke to Clark about purchasing a right to use the ditch, which it is claimed was an admission by plaintiff of defendant's right and that plaintiff was not claiming any right in himself. Plaintiff testified to this as follows: ''I had that talk with Clark one time about 1903. I had that talk with Clark one time when I came up the ditch to take water down; and I asked him to write to Hawn and see what Hawn would sell me an interest in the ditch for. Afterwards, Clark reported that Hawn wanted $500.00. I told him I would not give him anything. . . . After he wrote and said he wanted $500.00 I told him I wouldn't give him anything. Just because Hawn used to claim the ditch I told him I did not want to have any trouble; I would buy a little interest if he owned it. . . . After I had this talk with Mr. Clark about paying for water in the ditch I used it just as I did before.''

This episode by no means establishes a conclusive recognition of defendant's right on the part of plaintiff. It seems rather to have been an attempt by plaintiff to avoid trouble by purchasing his peace which came to nothing and tended to show that plaintiff rested upon his own right in the end.

The elements essential to the establishment of a prescriptive right will be briefly noticed. They are as claimed by appellant and are well settled.

The user by plaintiff, during the irrigation season, was actual, open, notorious and not clandestine. This appears clearly by the testimony of plaintiff's witnesses and the use was so open that defendant, or his agent Clark, could not have failed to note the fact, and if not, was such as to put him upon inquiry which was enough. (*De Frieze* v. *Quint,* 94 Cal. 653, [28 Am. St. Rep. 151, 30 Pac. 1].)

The element of hostility appears not only from plaintiff's evidence but from that of Clark, who testified for the defendant. The case of *Strong* v. *Baldwin,* 137 Cal. 438, [70 Pac. 288], relied on by appellant, is in many respects similar in its facts to those here, and is an instructive case. It differs in this, that the adverse claimant in that case paid to the owner of the land through which the ditch passed an annual rental for the privilege of using the ditch. The element of hostility was held to have been fully rebutted by this fact.

Plaintiff's claim of title was as his own and exclusive of any other right. This requirement does not mean that all other persons were excluded from the use of the ditch, so long as plaintiff's right was not taken from him. (*Strong* v. *Baldwin,* 137 Cal. 438, [70 Pac. 288].) Plaintiff claimed the right to use the ditch for irrigating his own land, and it is immaterial that others also had a right to use it.

It was also requisite that the use should be continuous and uninterrupted for five years prior to the commencement of the action. The evidence was that plaintiff used the water whenever he needed it for irrigating purposes, and among these uses was that of watering alfalfa, grain, trees and vines. ''The adverse user of an irrigating ditch through the lands of the owner, only during the cropping season, the ditch not being needed at other times, constitutes a continuous adverse user, as the omission to use when not needed does not break the continuity of use." (*Hesperia etc. Co.* v. *Rodgers,* 83 Cal. 10, [17 Am. St. Rep. 209, 23 Pac. 196].)

Nothing appeared in the case to show that the ditch was assessed for taxation separate from the land or at all. It was not, therefore, necessary to show payment of taxes. (*Harvey* v. *Meyer,* 117 Cal. 60, [48 Pac. 1014].) The law does not require an easement to be assessed, and the burden was on

defendant to show that it had been assessed. (*Oneto* v. *Restano,* 78 Cal. 374, 379, [20 Pac. 743].)

The right must have been asserted under claim of title with the knowledge and acquiescence of the owner of the land. Plaintiff's claim of right clearly appeared; defendant's knowledge and acquiescence of plaintiff's claim may well have been inferred from the facts. This was a matter "for the court to determine as a fact in the light of the relations between the parties and of the surrounding circumstances." (*Franz* v. *Mendonca,* 131 Cal. 205, [63 Pac. 361]; 146 Cal. 640, [80 Pac. 1078].)

I do not understand that the element of "acquiescence" is to be shown independently of knowledge, in the common acceptation of that term; i. e., that an affirmative permission or consent be given in addition to knowledge of the hostile claim of right. If the owner has the knowledge which the law requires shall be imputed to him, and takes no steps to prevent the adverse claimant from his continuous enjoyment of the right claimed by him, such owner will be deemed to have acquiesced in such use. This court had occasion in a recent case to consider the point, in which the rule was stated. It was there said: "No particular act or series of acts is necessary to be done in order that the possession may be notorious, but any visible act which clearly demonstrates an intention to claim ownership and possession will be sufficient to establish claim of adverse possession. Such claim may be made out by visible acts, without any assertions by word of mouth. When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows. The burden is in the first instance upon the plaintiff to prove his title by prescription. After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a *prima facie* case. It then devolves upon the defendant to show that the use was permissive or without the knowledge of the defendant." (*Gurnsey* v. *Antelope Creek etc. Co.,* 6 Cal. App. 387, [92 Pac. 328].)

We have thus taken up the several elements claimed by appellant to be requisite to a good prescriptive right. We think they are shown to have been sufficiently established by the evidence as found by the trial court.

The testimony of defendant was that he constructed the ditch at least over sections 17 and 20 to irrigate that land. He testified also that he built it along its entire length, and if true, it is claimed by plaintiff (so far as defendant can now deny) that he did so presumably with the consent of intervening land owners. The court found that water has flowed continuously in the ditch since its construction. In this state of facts plaintiff now claims that "defendant cannot, without strengthening plaintiff's claim of adverse user, deny that in constructing this ditch, he did so with the consent of the owners of the land traversed by the ditch; and having as plaintiff's predecessor in title, constructed the ditch for the benefit of sections 17 and 20, he is estopped now, as between himself and the owner of that land, to contend that the ditch did not thereby become an appurtenance." We are not prepared to say that in this contention plaintiff is not correct. It is not necessary, however, to decide the question.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.