[S. F. No. 7546. In Bank.—March 18, 1918.]

## HARRIET HODGKINS, Respondent, v. PEOPLE'S WATER COMPANY (a Corporation), Appellant.

EJECTMENT—ADVERSE POSSESSION BY JUDGMENT DEFENDANT—CONSTRUCTION OF SECTION 685, CODE OF CIVIL PROCEDURE.—Section 685 of the Code of Civil Procedure, authorizing the superior court to issue a writ of execution after the lapse of five years from its entry, does not prevent a defendant against whom a judgment in ejectment has been rendered from gaining title to the land in suit by adverse possession against the judgment plaintiff in the meantime.

ACTION TO QUIET TITLE—ADVERSE POSSESSION—SUFFICIENCY OF EVIDENCE.—In an action to quiet title, where it is proven that the plaintiff and her grantor and predecessors in interest for more than fifteen years were in the peaceable, visible, and uninterrupted possession of the property in suit and during that time erected barns, outhouses, and other improvements thereon, inclosed portions of the land with substantial fences, which at all times thereafter they maintained and kept in good order and repair, and they cultivated the land, raising crops and pasturing stock thereon, and generally used it for the purpose for which it was adapted and for their ordinary purposes, and during the entire period paid all taxes levied and assessed thereon each year, the evidence supported a finding that the possession was open, peaceable, and notorious, adverse and hostile, and that plaintiff was the owner of the land by adverse possession.

ID.—APPLICATION FOR WRIT OF POSSESSION—TITLE TO REAL PROPERTY.—
Title to real property cannot be litigated upon an application for a
writ of possession.

ACTION IN EJECTMENT—MOTION FOR NEW TRIAL—STIPULATION FOR OC-
CUPATION OF LAND—ADVERSE POSSESSION.—In an action in eject-
ment, where, after plaintiff recovered judgment, defendants served
and filed their notice of intention to move for a new trial, where-
upon a stipulation was entered into by the parties that execution
should not be taken out pending the hearing and determination of
the motion and that the occupation of the land by the defendants
was by consent of plaintiff, which motion was never brought on for
hearing and no further proceedings taken for fifteen years after
the rendition of the judgment, when the stipulation was ordered
set aside and the motion dismissed, the stipulation ceased to have
any effect when the motion for a new trial was abandoned by fail-
ure to take the necessary steps to perfect it, and plaintiff's posses-
sion of the land then resumed its hostile character, and having con-
tinued for the required time, plaintiff obtained title to the land
by adverse possession.

ID.—STATUTE OF LIMITATIONS—WHEN NOT SUSPENDED.—A mere judg-
ment for the plaintiff in an action in ejectment does not stop the
running of the statute of limitations in favor of a defendant hold-
ing adversely.

APPEAL from a judgment of the Superior Court of
Alameda County.  Wm. H. Waste, Judge.

The facts are stated in the opinion of the court.

Tom M. Bradley, and Harry E. Leach, for Appellant.

Milton S. Hamilton, Herbert L. Breed, and J. P. O'Brien,
for Respondent.

SHAW, J.—This case was transferred to the district court
of appeal of the first district for consideration and decision,
and in due time that court rendered its decision affirming the
judgment, upon an opinion by Mr. Justice Kerrigan.  Upon
petition of appellant to this court that decision was vacated
and the case was transferred here for a rehearing.  After
further consideration we have reached the conclusion that
the opinion of Mr. Justice Kerrigan and the judgment of the
district court thereon was correct.

The principal point urged in the petition for rehearing
was that, inasmuch as section 685 of the Code of Civil Pro-

cedure authorizes the superior court to issue a writ of execution for possession upon a judgment in ejectment after the lapse of five years from its entry, it must of necessity follow that the defendant in such judgment cannot, in the meantime, gain a title to the land by adverse possession against the judgment plaintiff. This conclusion does not necessarily follow. An adverse claim of title to the land may be asserted by the defendant as well against the plaintiff in such judgment as against any other person. The essence of an adverse claim of title is that it is made against the whole world, and there is nothing in the rule which exempts the plaintiff in ejectment from its operation, provided the claim is made against him as well as others. The provision of section 685 allowing execution to issue after five years has no bearing upon the question whether or not the defendant against whom the execution is to be issued has or has not in the meantime acquired a new title to the property which is good against the plaintiff. As stated in the opinion of the district court, that question cannot be litigated upon the motion for execution. This does not mean that such title cannot be acquired, either by a conveyance from a true owner of a title paramount to both the parties in a judgment suit, or by an adverse possession initiated after the entry of the judgment. The opinion of the district court is hereby approved and adopted. It is as follows:

"This is an appeal by defendant from a judgment in an action to quiet title which awarded a part of the land sued for to the plaintiff.

"The facts are briefly as follows: In the year 1880 John Hodgkins purchased a possessory claim to the land described in the amended complaint from one John H. Scott, and took the title to same in the name of Joe Hodgkins, his son, who, with his father and mother, went into immediate possession. In 1896 the Central Pacific Railway Company, defendant's predecessor in interest, claiming legal title to said land, commenced suit against Joe Hodgkins and May Hodgkins, his wife, to recover its possession. Thereafter, and prior to the trial of said action, Joe Hodgkins made a deed, conveying to his mother, Harriet Hodgkins, plaintiff herein, a part of said property designated in the record herein as parcel A, and she at once went into possession of that parcel. On August 25, 1897, after trial, judgment was entered in said

suit against Joe Hodgkins declaring that the Central Pacific Railway Company was entitled to possession of the premises. On August 28, 1897, he, together with his wife, served and filed notice of their intention to move for a new trial in that action, whereupon the parties entered into a stipulation by which the Central Pacific Railway Company agreed not to take out execution pending the hearing and determination of the motion for a new trial. Said motion, however, was never brought on for hearing, no appeal from the judgment was taken, and no further proceedings were had in the case until fifteen years after rendition of the judgment, when, in May, 1913, upon motion the stipulation referred to was set aside, the motion for a new trial was dismissed and a writ of possession issued, pursuant to which the sheriff ejected all persons from the land, and this defendant was put in possession as successor in interest of the Central Pacific Railway Company. On May 26, 1913, Joe Hodgkins conveyed to plaintiff herein the land described in parcel B. Subsequently Harriet Hodgkins, plaintiff herein, brought this action to quiet title, claiming title to parcel A by prescription and also by virtue of the deed from her son Joe, made after the commencement of the former action and prior to its hearing and determination; and to the part of the land known as parcel B by deed to her from her son made after the ejectment in May, 1913.

"From the record it further appears that the plaintiff and her grantors and predecessors in interest, for more than fifteen years prior to May, 1915, were in the peaceable, visible, and uninterrupted possession of the property described in the findings; that while so in possession she and her son Joe erected on the respective parcels of land A and B barns, outhouses, and other improvements, inclosed portions of said land with substantial fences, which at all times thereafter they maintained and kept in good order and repair; that they cultivated the land, raising crops and pasturing stock thereon, and generally using the land for the purposes for which it was adapted and for their ordinary purposes; that during the entire period they paid all taxes levied and assessed thereon each year.

"Upon these facts the court found that the plaintiff was the owner and entitled to a portion of the two parcels of land embraced within the description set forth in the amended

complaint.    It is from that portion of the judgment in favor
of the plaintiff that the defendant prosecutes this appeal.

"The Central Pacific Railway Company in the original
action failed to file a *lis pendens;* and the plaintiff in the
present action claims that she had no notice, actual or con-
structive, of the pendency of the suit, and that therefore her
claim to parcel A is unaffected by the judgment in that
case.    Under all the evidence in this case such claim is clearly
untenable, and her right to either parcel A or B depends
upon the circumstances of the possession  thereof after the
judgment in the ejectment suit.

"The evidence supports the findings of the court that the
possession of both parcels by the plaintiff and her grantors
and predecessors was not only open, peaceable, and notorious
for the period of over fifteen years, but that it was also ad-
verse and hostile.    The character of the  possession of the
property as hereinbefore described raised the presumption
that it was held adversely (Code Civ. Proc., secs. 322–325;
*Wheatley* v. *San Pedro etc. Ry. Co.,* 169 Cal. 505, 515, [147
Pac. 135] ; *Gray* v. *Walker,* 157 Cal. 381–385, [108 Pac. 278] ;
*Gurnsey* v. *Antelope etc. Co.,* 6 Cal. App. 387, 391, [92 Pac.
326]) ; which presumption it cannot be held was successfully
rebutted by the stipulation entered into by the parties in the
ejectment suit staying execution on the  judgment.    That
stipulation was to the effect that pending the making and
determination of a motion for a new trial the occupation
of the land by the defendants therein was by consent of the
plaintiff; but when the motion was abandoned—as is was when
the moving parties failed to take the necessary steps to per-
fect it—it ceased to have any such operative force and effect,
and the possession thereafter resumed its hostile character.

"The only point seriously relied upon by the defendant
for a reversal of the judgment is the claim that the plaintiff
could not have obtained title by adverse possession between
the time of the entry of judgment in the former action and
the issuance of execution thereon.    In other words, defendant
asserts that the running of the statute of limitations was
suspended from the filing of the action or the entry of judg-
ment therein up to the time when an execution might right-
fully be issued.    Of course, it is conceded that title to real
property cannot be litigated upon an application for a writ
of possession (*Landregan* v. *Peppin,* 94 Cal. 465, [29 Pac.

771] ; *Kirsch* v. *Kirsch,* 113 Cal. 56, [45 Pac. 164] ; *Fox* v. *Stubenrauch,* 2 Cal. App. 88, 93, [83 Pac. 82]) ; so the action of the court in the ejectment suit in issuing the writ of possession more than ten years after the defendant was entitled to the same as a matter of right has no bearing upon the question now under discussion. We do not think, as defendant contends, that the judgment in the former action arrested the running of the statute of limitations until the writ of possession actually issued. The judgment in that action merely gave to the plaintiff therein the right to re-enter the property, but did not prevent actual occupants thereof from obtaining title to the land by adverse possession after the judgment became final, which it did in February, 1898. Persons not parties to the action might after judgment have acquired title to the property by adverse possession; and we fail to see any good reason why one who is a defendant in an action to recover property may not acquire title by adverse possession against a plaintiff who for more than five years after the judgment therein becomes final fails to exercise his right to re-enter the property. A grantor may acquire title by prescription against his grantee. (*Baker* v. *Clark,* 128 Cal. 181, [60 Pac. 677].) In the case of *Carpenter* v. *Natoma M. & W. Co.,* 63 Cal. 616, it was expressly held that a judgment in ejectment does not create a new estate or vest a new title in the plaintiff so as to interrupt the running of the statute of limitations, but that an actual entry is necessary to effect that object. That case was approved in *Gould* v. *Carr,* 33 Fla. 533, [24 L. R. A. 130, 15 South. 262]. The court of appeals of Texas, in *Pendleton* v. *McMains,* 32 Tex. Civ. 575, [75 S. W. 349], decided that adverse possession of land for ten years after the rendition of judgment in an ejectment suit where no writ of possession was issued, established a title against the plaintiff independent of and subsequent to the right of possession adjudicated in the ejectment suit. That was an action of trespass to try title to land, and was based upon a judgment rendered in a former suit decreeing that the plaintiffs therein were entitled to possession. The decision contains a recital that 'a writ of possession and execution for costs were awarded, but it was not shown that either had ever been issued.' In its opinion the court assumes that no writ upon the former judgment was ever issued. At page 349 [75 S. W.] of the opinion

the court says: 'It was established by uncontroverted evidence that the land in controversy has been inclosed by a fence since 1881, and defendants in error have been in the peaceful, continuous, open, and adverse possession of the same, cultivating a portion of it, and using the other portion as a pasture, for more than ten years after the judgment was obtained by W. W. Sloan and others, and before this suit was instituted. The judgment obtained by Sloan and others against defendants in error in 1888 divested them of all title owned by them in the land in controversy at that time, but did not prevent them from obtaining title to it by adverse possession after that time. More than thirteen years had elapsed since the rendition of the judgment before this suit was instituted, and during all those years defendants in error had been in possession of the land, and claiming title to it against the world. There is no peculiar sacredness in a title to land obtained through a judgment that lifts it out of the scope and purview of statutes of limitation, and if the possession be adverse for ten years, whether it be by the defendant in the judgment or anyone else, it will perfect a title.'

"In *Mabary* v. *Dollarhide,* 98 Mo. 198, 204, [14 Am. St. Rep. 639, 11 S. W. 611], the court said: 'We cannot see how the mere recovery of a judgment in an action of ejectment can suspend the running of the statute of limitations. To have that effect there must be possession under it, or something done to make the defendant's possession subordinate to the plaintiff's title.'

"And in *Smith* v. *Trabue,* 1 McLean, 87, [Fed. Cas. No. 13,116], the court declared: 'A judgment in an action of ejectment against a defendant who holds adversely does not of itself suspend the statute of limitations. To do this there must be a change of possession. It is true the judgment fixes the right of entry in the lessor of plaintiff, if he can make entry without force, but if he fails to make his entry, either with or without a writ of possession, the statute of limitations will continue to operate against the right. . . . Nothing short of this will stop the statute.' (See, also, *Dupont* v. *Charleston etc. Bridge Co.,* 65 S. C. 524, [44 S. E. 86], and note to *Snell* v. *Harrison* [Mo.], 52 Am. St. Rep. 648.)

"Here the court did not find that the property was held by consent of the owner of the legal title nor in subordination

to the judgment in the former action; but upon sufficient evidence it found that the property was held adversely to and in denial of the title of the defendant for more than the full statutory period after the judgment became final. We, therefore, hold that the statute is a complete bar to defendant's claim, and that plaintiff's prescriptive title was fully established.''

The judgment is affirmed.

Sloss, J., Melvin, J., Richards, J., *pro tem.,* Wilbur, J., Victor E. Shaw, J., *pro tem.,* and Angellotti, C. J., concurred.